Ministry of Justice



وزارة ال ل.

الاشارة: ١٢٨٤ /١٣٠٤/١٢٨٦

التاريخ: ١٥ فبراير ٢٠١٢

**The Undersecretary**
**Department of Justice**
**United States of America**

Sir,

With reference to your request for assistance in serving judicial documents upon **Mr. Fahad Mohammed Al Sharekh**, at his given address in the attached documents.

Please find the attached judicial documents officially sealed establishing the service, as well as the certificate of implementation according to the form provided by Article 6 of the Hague Convention 1965.

Please accept our esteem and consideration.

**Abdulaziz Youssef Al-Abdullah**

Acting Undersecretary of the
Ministry of Justice

**CERTIFICATE**

The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,

1) *  that the document has been served

   - the (date)  22 JAN. 2012

   - at (place, street, number)  ALSHARQ, ST. JABER ALMUBARAK ALSHAROOQ TOWER, FLOOR 21.

   - in one of the following methods authorised by Article 5:

   [ ] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention.*

   [ ] (b) in accordance with the following particular method:*

   [ ] (c) by delivery to the addressee, who accepted it voluntarily.*

The documents referred to in the request have been delivered to:  SM. MOHAMMED THUYNI

   - (identity and description of person)

   - relationship to the addressee (family, business or other):  ALSHARQ POLICE STATION

2) *  that the document has not been served, by reason of the following facts:

In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement. *

– ANNEXES –

Documents returned:

WE ATTACHED HEREWITH THE ORIGINAL COPY OF THE JUDICIAL DOCUMENTS YOU SENT US, OFFICIALLY STAMPED TO ESTABLISH THE SERVICE.

In appropriate cases, documents establishing the service:



Done at  KUWAIT , the 14TH FEB. 2012

Signature and/or stamp

How to proceed:

# REQUEST FOR SERVICE ABROAD
# OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters, signed at The Hague, the 15th of November 1965

11 - 863

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| Peter T. Dalleo, Clerk of Court<br>U.S. District Court for the<br>  District of Delaware<br>844 North King St., Unit 18<br>Wilmington, Delaware 19801<br>United States of America | State of Kuwait<br>Ministry of Justice<br>International Relations Department<br>Ministries Complex, Building No. 14<br>P.O. Box 6<br>Safaat 13001<br>Kuwait City<br>Kuwait |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in
conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof
on the addressee, i.e.

Fahad Abdullah Mohammed Abdul Rahman Al Sharekh
Sakhr Software Company
Kuwait--Sharq--Jaber Almubarak Street
Alshorooq Tower, Floor 21
PO Box 8196, Salmiya 22052, Kuwait

[√] (a)  in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the
Convention.*

[ ] (b)  ~~in accordance with the following particular method (sub paragraph (b) of the first paragraph of
Article 5):*~~

[ ] (c)  ~~by delivery to the addressee, if the addressee accepts it voluntarily (second paragraph of
Article 5).*~~

The authority is requested to return or to have returned to the applicant a copy of the documents
with a certificate as provided on the next page.

List of documents

1. Summons
2. Complaint
3. Civil Action Cover Sheet

11 - 863

Done at Wilmington        , the 23rd day
September 2010

Signature and/or stamp

*Peter Dalleo*
*Deputy Clerk*

## CERTIFICATE

The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,

1) *  that the document has been served

    - the (date)

    - at (place, street, number)

    - in one of the following methods authorised by Article 5:

    [ ] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention.*

    [ ] (b) in accordance with the following particular method:*

    [ ] (c) by delivery to the addressee, who accepted it voluntarily.*

The documents referred to in the request have been delivered to:

    - (identity and description of person)

    - relationship to the addressee (family, business or other):

2) *  that the document has not been served, by reason of the following facts:

In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement. *

– ANNEXES –

Documents returned:

In appropriate cases, documents establishing the service:

                    Done at              , the

                    Signature and/or stamp

## SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, signed at The Hague, the 15th of November 1965

(Article 5, fourth paragraph)

Identité et adresse du destinataire / *Identity and address of the addressee* / ⸺:

```
Fahad Abdullah Mohammed Abdul
Rahman Al Sharekh
Sakhr Software Company
Kuwait--Sharq--Jaber Almubarak St.
Alshorooq Tower, Floor 21
PO Box 8196, Salmiya 22052, Kuwait
```

### IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

### *IMPORTANT*

*THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.*

*IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.*

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

Delaware State Bar Association, Lawyer Referral Service
+1 (302) 478-8850

---

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

*It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.*

**Name and address of the requesting authority:**

Peter T. Dalleo, Clerk of Court
U.S. District Court for the District of Delaware
844 North King St., Unit 18
Wilmington, Delaware 19801, United States of America

**Particulars of the parties: \***

The plaintiffs, who are named in the complaint, may be contacted through
their attorney, Daniel J. Lyne, Esq., Murphy & King, P.C., One Beacon St.,
Boston, Massachusetts 02108, USA, +1 (617) 423-0400, djl@murphyking.com

## JUDICIAL DOCUMENT **

**Nature and purpose of the document:**

The summons notifies the defendant of its obligation to answer or otherwise
respond to the complaint within 21 days of service. The complaint notifies
the defendant of the nature of the plaintiffs' claim and the plaintiffs'
demand for relief.

**Nature and purpose of the proceeding and, where appropriate, the amount in dispute:**

This is a civil action for damages. The amount in dispute is $14 million
(US).

~~Date and place for entering appearance: **~~

~~Court which has given judgment: **~~

~~Date of judgment: **~~

**Time limits stated in the document: ****

An answer or motion must be served within 21 days of the date of service of
process.

## ~~EXTRAJUDICIAL DOCUMENT~~ **

~~Nature and purpose of the document:~~

~~Time limits stated in the document: **~~

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| BENJAMIN VAN ROY, et al. | ) |
| | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. **1 1 - 8 6 3** |
| SAKHR SOFTWARE CO., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Fahad Mohamad Al-Sharekh
c/o Sakhr Software Co. K.S.C.C.
Kuwait - Sharq - Jaber Almubarak Street
Alshorooq Tower, Floor 21
P.O. Box 8196
Salmiya - 22052, Kuwait

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   John G. Day
ASHBY & GEDDES
500 Delaware Ave.
P.O. Box 1150
Wilmington, Del. 19899

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:   September 23, 2011

_____
Signature of Clerk or Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BENJAMIN VAN ROY, SRINIVAS )
BOLLIMPALLI, EGGERT )
DAGBJARTSSON, AMIT DESAI, MARTIN )
FRIEND, JOHN HAIGH, ARNOLD )
LINDSETH, DINKAR MALLADI, LUIS )
MARTINS, CIAMAC MOALLEMI, )
PATRICK NGUYEN, VICTOR PACI, )
JAYENDU PATEL, JOSEPH SCHMID, )
ADEEB SHANA'A, BRETT SMITH, JOHN )
TSITSIKLIS, DANIEL VAN ROY, )      C.A. No.      11 - 8 6 3
EDWARD VAN ROY, MARK VERSHEL, )
RICHARD ZECKHAUSER, HARISH )       **JURY TRIAL DEMANDED**
LECAMWASAN as Trustee of the )
Lecamwasan Family Trust, and ROEBUCK )
ASSOCIATES L.P., )

              Plaintiffs,   )
                            )
v.                          )
                            )
SAKHR SOFTWARE CO. (K.S.C.C.), )
FAHAD ABDULLAH MOHAMMED )
ABDUL RAHMAN AL SHAREKH, )
EXCUSE ME SERVICES, INC., SAKHR )
STOCK, LLC, and STEVEN L. SKANCKE, )
                            )
              Defendants.   )

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2011 SEP 23   PM 1:40

## COMPLAINT

## PRELIMINARY STATEMENT

1.      This is an action for damages arising out of a Kuwaiti corporate acquirer's refusal

to pay the agreed merger consideration after acquiring a US software company. On October 2,

2009, Sakhr Software Co., (K.S.C.C.) ("Sakhr"), a Kuwait shareholding closed company

purchased 100% of Excuse Me Services, Inc., a Delaware corporation, ("EMS" or "Dial") in an

all-stock merger valued by the parties at $14,000,000 (US). All of EMS's shareholders—most of

whom are plaintiffs in this lawsuit—delivered their EMS shares to Sakhr, which were then cancelled in exchange for a right to receive Sakhr shares valued at $14,000,000 ("the Merger Consideration"). Sakhr later refused to deliver the Merger Consideration.

2.      Sakhr's proffered excuse was that it could not obtain necessary consents from the Kuwaiti government. But in the Plan of Merger signed by all parties, Sakhr, Sakhr Stock, LLC, a US company set up by Sakhr to distribute the Merger Consideration ("Sakhr Stock"), and EXMS Holdings Corp., a US company set up by Sakhr to merge with EMS ("EXMS"), all expressly represented and warranted to EMS's shareholders that no Kuwaiti governmental approvals were required to consummate the merger, and an opinion of Sakhr's attorney delivered at closing represented that performance did not require the consent, license, approval or authorization of the Kuwaiti government. These and other pre-closing misrepresentations and omissions, given in greater detail below, defrauded the plaintiffs.

3.      In addition to their claims for securities fraud under federal law and common law fraud, the plaintiffs assert a claim for fraud in the sale of securities under the Delaware Securities Act. The plaintiffs assert a claim for breach of contract against Sakhr because Sakhr contractually promised to indemnify the shareholders against loss arising out of breaches of the representations and warranties, and it has failed to discharge its indemnification obligations. Lastly, the plaintiffs assert a breach of contract claim for Sakhr's failure to deliver the Merger Consideration.

## PARTIES

4.      Each of the plaintiffs is a former shareholder of EMS. As further alleged below, Benjamin Van Roy, one of the plaintiffs, is the Stockholders' Representative under the terms of the merger agreement at issue in this case. Van Roy is suing both individually in his capacity as a former shareholder and in his representative capacity as Stockholders' Representative.

5.     The defendant, Sakhr, is a Kuwaiti shareholding closed company.  On information and belief, its head office is located at  Kuwait—Sharq—Jabar Almubarak Street, Alshorooq Tower, Floor 21, P.O. Box 8196, Salmiya 22052, Kuwait.

6.     The defendant, EMS, is a Delaware corporation.  Its registered agent for service of process is Corporation Service Co., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.     The defendant, Sakhr Stock, is a Delaware limited liability company.  Its registered agent for service of process is Corporation Service Co., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.     The defendant, Fahad Abdullah Mohammed Abdul Rahman Al Sharekh ("Al Sharekh"), is the son of Sakhr's founder and was at all relevant times in control of Sakhr's business.  On information and belief, he has a place of business at Sakhr's offices in Kuwait.

9.     The defendant, Steven L. Skancke ("Skancke"), is the president and CEO of Sakhr Software USA, Inc., a subsidiary of Sakhr. He has a business address at 8065 Leesburg Pike, Suite 305, Vienna, Virginia 22182.

## JURISDICTION

10.     This action arises under a federal statute, §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.

11.     The claims arising under state law asserted in this Complaint are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## STATEMENT OF THE CLAIM

### A.    Background

12.    Prior to the merger at issue in this case, EMS was a US technology company. It specialized in mobile applications and cloud-based speech recognition technology, and it offered a number of products, including "Dial Directions", "Say Who", and "Say Where". Dial Directions was a voice-activated service for getting directions to addresses, businesses, and landmarks. A user could dial a phone number, speak a street address or the name of a business or event, and receive an SMS message with directions to the destination. Say Where was a voice-activated mobile application for obtaining location-based services, such as driving directions and local business information. Say Who was a voice-activated mobile application for dialing contacts within a user's contact manager application. A user could speak the name of a person, and the software would search the user's contacts and place the call to the desired phone number.

13.    Sakhr is a Kuwaiti software company that specialized in Arabic language technology, including technology for on-the-fly translation from Arabic to English and vice versa.

14.    In early 2009, EMS began partnering with Sakhr Software USA, Inc., a Sakhr subsidiary, to create a smart phone software application to allow real-time English-to-Arabic and Arabic-to-English translation. A user could speak into his or her phone in one of the two languages, and then hear and read a translation of the spoken phrase into the other language.

15.    In March 2009, Sakhr made an offer to acquire EMS for $14,000,000 (US) pursuant to a written Letter of Intent ("the LOI"). The LOI was subject to due diligence and agreement on the form of definitive purchase documents. The LOI called for Sakhr to purchase all of EMS's shares and pay for them with Sakhr shares. The LOI contained representations and

warranties concerning Sakhr's profitability and financial stability, including a representation that Sakhr held over $10,000,000 in cash reserves. The LOI stated that in the event that the parties entered into a definitive agreement, all LOI representations and warranties would be deemed merged into the definitive agreement.

16.     Plaintiffs relied on Sakhr's representations of profitability and financial strength in agreeing to enter into the LOI, and later to execute the Merger Agreement.

**B.     Pre-Merger Discussions.**

17.     At an early stage in the merger discussions, the parties discussed various proposed merger structures, including whether Kuwaiti governmental authorities would require any form of pre-merger substantive review.

18.     In an e-mail dated May 7, 2009, Abdul Aziz Al-Yaqout ("Yaqout"), a lawyer with DLA Piper, wrote to Richard K.A. Becker ("Becker"), a lawyer with Hogan & Hartson.

19.     Upon information and belief, Yaqout and Becker were retained by Sakhr to structure the proposed merger, and to prepare the necessary merger papers, including any necessary filings with the Kuwaiti government.

20.     In his e-mail to Becker, which Sakhr later voluntarily shared with EMS, Yaqout confirmed that the proposed merger could be accomplished either by issuing new Sakhr shares to EMS shareholders or by transferring existing Sakhr shares. Yaqout noted that issuance of new Sakhr shares would require "... an independent valuer appointed by the [Kuwaiti] Court of First Instance at the request of the company." When asked: "If we decide to go a different route, and redistribute existing Sakhr shares instead of issuing new ones, will this remove the need for the lengthy process?", Al-Yaqout responded: *"Yes. There would be no lengthy process involved in such a scenario."*

21.     Sakhr forwarded the May 7th attorney e-mail exchange to Adeeb Shana'a, EMS's CEO and a selling shareholder, on May 7, 2009 with the approval of Sakhr's Chairman.  As a result, EMS shareholders thereafter understood that a Kuwaiti share valuation would be necessary if and only if Sakhr issued new shares in connection with the merger.

22.     For this reason, the parties then agreed that no new Sakhr shares would be issued. Instead, Sakhr's existing shareholders agreed to use a portion of their existing shares to pay the Merger Consideration, thus obviating the need for Kuwaiti government review and approval.

23.     Sakhr's agreement to use existing Sakhr shares for the merger consideration was a material inducement to EMS shareholders to execute the Merger Agreement.

## C.     The Information Statement.

24.     In connection with the proposed merger, and because the issuance of Sakhr shares to EMS shareholders was deemed a sale of restricted securities within the meaning of Rule 144 under the Securities Act of 1933 and related state blue sky securities laws, the parties jointly prepared and EMS distributed an Information Statement, Consent Solicitation and Notice of Statutory Appraisal Rights (the Information Statement") to each EMS shareholder.

25.     The Information Statement clearly stated that,

Information contained in this Information Statement regarding EMS has been provided by EMS *and information contained in this Information Statement regarding [Sakhr] has been provided by [Sakhr].*

(Emphasis added).  Sakhr knew that EMS relied on it to provide complete and accurate information regarding Sakhr for inclusion in the Information Statement.

26.     Sakhr's counsel was provided with drafts of the Information Statement for review and approval on multiple occasions during June 2009 before the Information Statement was delivered to EMS's shareholders.

27.     The Information Statement confirmed that the same number of issued and outstanding Sakhr shares pre-merger would be issued and outstanding post-merger, as follows:

> Parent [i.e., Sakhr] has **30,000,000 authorized shares** of capital stock, all of which are issued and outstanding.  The nominal value of each share is 100 fils or .10 Kuwaiti Dinars.
>
> * * *
>
> Sakhr is a private Kuwaiti shareholding close corporation and there is no public market for its securities.  For the purposes of the Merger, the parties have agreed that the post-Merger value of the total equity of Sakhr shall equal $224,000,000US ($210,000,000 pre-Merger valuation for Sakhr equity plus the $14,000,000 valuation of EMS).  Based on the current capitalization of Sakhr share has a pre-Merger value of $7.00US ($210,000,000 divided by the 30,000,000 shares outstanding).  **Post-Merger, the imputed value of a Sakhr share is $7.47US ($224,000,000 divided by 30,000,000 shares)** …

(Emphasis supplied).

28.     The Information Statement additionally confirmed that the Merger Consideration would come from **existing** Sakhr shares.

> Sakhr Stock LLC ("Distribution Sub") was formed on May 21, 2009…
>
> Sakhr formed the Distribution Sub because under Kuwaiti law, the direct payment of Sakhr shares as Merger Consideration from [Sakhr] to EMS Stockholders requires compliance with procedures which would greatly extend the amount of time required to complete the Merger.  In order to effect the delivery of the Merger Consideration, upon Closing, **existing Sakhr shareholders shall transfer the appropriate number of shares** to Distribution Sub and Distribution Sub will be the delivery agent to the EMS Stockholders of the Merger Consideration…

(Emphasis added).

29.     The Information Statement further represented that "promptly following receipt of your stock [EMS] stock certificates…[Sakhr] will pay and deliver to you the stock consideration you are entitled to receive as a result of the Merger."  Finally, under the caption, "Covenants Related to Parent", the Information Statement represented that "[Sakhr] shall cause Distribution Sub to be capitalized with a sufficient number of [Sakhr] shares to effect the Merger and distribution of Merger Consideration."

30.      The representations made by Sakhr in the Information Statement were false

because the defendants subsequently claimed after Closing that Sakhr was unable to transfer the

Merger Consideration without first obtaining the approval of Kuwaiti governmental authorities.

31.      For example, in an e-mail dated December 22, 2009, Hassan Hanano, a

consultant to Sakhr, wrote to Shana'a, stating:

> I am writing to follow up on the outstanding items needed by the Auditors in Kuwait to
> record the DD/Sakhr merger.
>
> If you remember, the outstanding item remaining is a document/letter from you, the CEO
> of DD at the time of the merger, explaining/justifying the [$14,000,000 merger]
> valuation.

On December 31, 2009, Hanano again wrote to Shana'a:

> *As you are aware, Sakhr is a company domiciled in Kuwait. EMS is domiciled in the US. In
> order for the merger to be completed in a clean manner, it must comply with all the rules and
> regulations of both jurisdictions. What we are trying to avoid here is a future claim by any
> financial authority in Kuwait that questions the validity of the shares held by ex-EMS
> shareholders, yourself included.*
>
> *This is the reason why we (Fahad [Al Sharekh], Steve [Skancke] and myself have been asking
> for the letter of Offer for the last few months. …*
>
> *The letter of Offer would have had a clear indication of EMS' value, which would have been
> the ideal requirement for Kuwaiti compliance.*

(Emphasis supplied).

32..      Similarly, on April 8, 2010, Skancke wrote to Van Roy in response to his repeated

requests to understand why former EMS shareholders had not yet received their Merger

Consideration:

> Ben
>
> It's a process and we waited to have all the docs from all the shareholders *before we went
> to the [K]uwaiti government for validation of docs.*

Skancke then claimed in a subsequent telephone conversation with Van Roy on January 27, 2011 that Sakhr had not been able to transfer the Merger Consideration because it did not have sufficient proof of the value of EMS pre-merger to satisfy Kuwaiti governmental approval requirements.  During the same call, Skancke refused to provide Van Roy with copies of any correspondence between Sakhr and the Kuwaiti government that supported his governmental approval claim.

33.     From and after the January 27, 2011 telephone call and through the present date, Sakhr has failed and refused to release the Merger Consideration, first claiming for months following the closing that necessary approvals were in process, and later claiming that EMS was not worth the Merger Consideration, thus excusing Sakhr's refusal to perform.

D.     **The Plan of Merger.**

34.     Under the terms of the Merger Agreement, EMS agreed to merge with EXMS, Sakhr's wholly-owned subsidiary, with EMS to be the surviving company, EXMS's common stock converted into EMS common stock, and EMS's pre-merger common stock cancelled in exchange for a right to receive the Merger Consideration.

35.     The agreed value of the Merger Consideration was $14 million.

E.     **The False Representations in the Merger Agreement.**

36.     In the Merger Agreement, Sakhr, Sakhr Stock, and EXMS made the following representations and warranties, inter alia:

Section 4.3     Authority; Noncontrovention; Voting Requirements

(a) Each of the Parent [Sakhr], Distribution Sub [Sakhr Stock], and the Merger Sub [EXMS] has all necessary power and authority to execute and deliver this Agreement and the other Transaction Agreements to which it is a party and to perform its obligations hereunder and to consummate the Transactions.  The execution, delivery and performance by each of the Parent, Distribution Sub, and the Merger Sub of this

Merger Consideration to the plaintiffs without first obtaining the approval of Kuwaiti

governmental authorities.

F.     **The False Representations and Material Omissions in the Information Statement.**

39.     Sakhr represented in the section of the Information Statement labeled,

"*Description of Parent [Sakhr] Capital Stock*", that Kuwait "regulates the conditions under which

a non-Kuwaiti may obtain and own shares in a Kuwaiti corporation, as well as limiting the

foreign purchaser to minority percentage ownership."

40.     Sakhr further represented in the Information Statement that that the distribution of

the Merger Consideration to EMS shareholders would occur in the following manner in

accordance with Kuwaiti law:

> Sakhr formed the Distribution Sub because under Kuwaiti law, the direct payment of
> Sakhr shares as Merger Consideration from Parent to the EMS Stockholders requires
> compliance with procedures which would greatly extend the amount of time required to
> complete the Merger. *In order to effect the delivery of the Merger Consideration [the
> Sakhr shares], upon Closing, existing Parent shareholders shall transfer the appropriate
> number of shares to Distribution Sub [Sakhr Stock] and Distribution Sub will be the
> delivery agent to the EMS Stockholders of the Merger Consideration,* as well as the
> corporate vehicle which will implement any Merger Consideration adjustments.

(Emphasis supplied).

41.     The Information Statement contained a comprehensive list of risk factors

including:

- the possibility that Sakhr might assert "indemnity claims" arising out of breaches

  of EMS's representations and warranties,

- the fact that EMS shareholders' ability to transfer, sell, or borrow against  their

  new shares in Sakhr would be limited after the merger,

- the fact that EMS would forego business opportunities that it might have if it

  remained a stand-alone company,

- the possibility that Sakhr might not be able to realize the anticipated benefits of the merger,

- the possibility that Sakhr might not be able to achieve business synergies resulting from the merger,

- the possibility that EMS could be negatively affected if the merger was not consummated,

- the possibility that EMS's officers and directors' personal interests in the merger might have affected their decision to support, approve, or recommend it, and

- the possibility that the merger might not receive the anticipated favorable US tax treatment.

42.     Nowhere in the Information Statement was there any suggestion that the Kuwaiti government was required to approve any aspect of the Merger, or that the Kuwaiti government might fail to give a required permission.  Sakhr's conscious omission of any Kuwaiti governmental approval risk factors in the Information Statement was consistent with Sakhr's multiple pre-closing representations that no such approvals were required, and the EMS shareholders relied to their detriment on Sakhr's risk factor omissions.

43.     Sakhr's representations and omissions in the Information Statement were false because the defendants claimed for the very first time post-closing that they were unable to transfer the Merger Consideration without first obtaining the approval of Kuwaiti governmental authorities, and without EMS shareholders first providing proof that their shares were worth $14,000,000 as of the date of the Closing.

**G.   Scienter.**

44.     At all times relevant hereto, the defendants knew that their representations in the
Merger Agreement and the Information Statement were false and misleading, that EMS
shareholders would reasonably rely upon Sakhr's representations in approving the proposed
merger, and that the failure to note the risk of governmental non-approval was a material
omission for which only Sakhr had access to the correct information.

45.     Sakhr, a Kuwaiti company, was advised by DLA Piper and Hogan & Hartson
LLP (now Hogan Lovells), both major international law firms, and knew, or was reckless in not
knowing, the requirements of Kuwaiti law concerning transfers of shares in Kuwaiti corporations
to foreigners.

46.     Skancke represented Sakhr in connection with the proposed merger and
negotiated the Letter of Intent.  Skancke repeatedly corresponded with the EMS shareholders on
behalf of Sakhr during the merger. Skancke led Sakhr's due diligence of EMS, and Skancke
served as the primary Sakhr contact for the EMS shareholders.  Through Skancke, Sakhr knew
of, or was reckless in not knowing of, the requirements of Kuwaiti law concerning transfers of
shares in Sakhr to the plaintiffs.

47.     Aside from the strong inference of scienter that arises from the circumstances
alleged above, there is direct evidence that Sakhr and Skancke knew of the requirements of
Kuwaiti law well before either the Information Statement was drafted or the Merger closed.

48.     In particular, in an e-mail from Skancke to Van Roy on April 8, 2010, Skancke
admitted that the defendants were aware of the necessity of Kuwaiti governmental approvals at
all times prior to the Closing:

> *Its a process and we waited to have all the docs from all the shareholders before we went to
> the kuwaiti government for validation of docs.*

*"[Sakhr] has taken all necessary company and other actions necessary to authorize the execution, delivery and performance by it of the Merger Agreement and its obligations thereunder"*;

*"The execution and delivery by Sakhr of the Merger Agreement and the performance by Sakhr of its obligations under the Merger Agreement do not require on the part of Sakhr any consent, license, approval or authorization of any governmental or regulatory body or official of Kuwait which has not been obtained"*; and

*"No ... filing or registration is required, in connection with the execution, performance or enforcement of the Merger Agreement or any related instruments other than the nominal stamp duty payable to the Ministry of Justice ..."*

56.     The plaintiffs tendered their EMS stock certificates on the Closing Date in reliance on the representations and covenants made in the Information Statement, the Merger Agreement and the DLA Piper opinion letter.

57.     The plaintiffs have not received the Merger Consideration in return.

**J.     The Buyer Indemnity.**

58.     Pursuant to the terms of the Merger Agreement, Sakhr agreed to indemnify and hold the EMS Stockholders and their successors and assigns harmless "from and against any and all Losses of such Person, directly or indirectly ... as a result of, or based upon, arising from or relating to, (i) any breach or violation of any of the representations or warranties, made by the [Sakhr, Sakhr Stock, or EXMS] in this Agreement ..."

59.     Under § 8.5 of the Merger Agreement, all EMS Stockholders (which includes both the plaintiffs and the EMS shareholders who have not joined as plaintiffs in this action) irrevocably authorized Benjamin Van Roy to assert claims for indemnification under the Merger Agreement.

60.     Van Roy provided the requisite Claim Notice pursuant to Article 8.4(a) of the Merger Agreement, and Sakhr failed to provide a proper Objection Notice or negotiate a resolution in good faith to resolve the dispute.

61.     By letter dated February 2, 2011, Van Roy terminated the Merger Agreement on

behalf of EMS shareholders and demanded damages in the amount of $14,000,000 (US) from the

Defendants.

62.     From and after the Notice of Termination, the Defendants have failed and refused

to pay the damages.

**COUNT 1**
**Securities Fraud**
**§ 10(b) of the Securities Act of 1934**
**(Against Sakhr, EMS, and Sakhr Stock)**

63.     The plaintiffs incorporate the allegations of paragraphs 1 to 62.

64.     Sakhr, EMXS, and Sakhr Stock made false material representations in the Merger

Agreement, namely:

    a.     The representation that "no other action on the part of the Parent, the Merger Sub or their stockholders or members is necessary to authorize the execution, delivery and performance by the Parent, Distribution Sub and the Merger Sub of this Agreement and the other Transaction Agreements to which it is a party and the consummation by it of the Transactions, subject only to the adoption of this Agreement by the Parent and the filing of the Certificate of Merger with the Secretary of State of the State of Delaware" (§ 4.3); and

    b.     The representation that "No consent, waiver, order, authorization or approval of any Governmental Authority or any other Person, and no declaration or notice to or filing or registration with any Governmental Authority or any other Person is required to be made, obtained, performed or given with respect to Parent in connection with the execution and delivery of this Agreement by Parent or the consummation by Parent of the transactions contemplated hereby or thereby, except for the filing of the Certificate of Merger with the Secretary of State of the State of Delaware and the relevant authorities of other States in which Parent is qualified to do business."

65.     Sakhr also omitted to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading.

In particular, Sakhr was the source of information concerning Sakhr in the Information

Statement, and the Information Statement expressly confirmed that information in the Information Statement concerning Sakhr *"had been provided by Sakhr."* The "Risk Factors" section of the Statement contains a discussion of many risk factors relating to Sakhr, but it did not contain any suggestion that the Kuwaiti government might not approve the transfer of the Merger Consideration to the plaintiffs.

66.     Sakhr also made additional false and misleading statements in the May 7, 2009 email forwarded to Shana'a when, in response to the question: "If we decide to go a different route, and redistribute existing Sakhr shares instead of issuing new ones, will this remove the need for the lengthy process?" its lawyer stated: "Yes.  There would be no lengthy process involved in such a scenario."

67.     Sakhr knew, or should have known, that EMS shareholders would rely on the representation that using existing Sakhr shares for the Merger Consideration would obviate the need for Kuwaiti governmental review and approval before the Merger Consideration could be distributed.

68.     Sakhr, EMXS, and Sakhr Stock's misrepresentations and omissions were knowing or reckless, and they acted with scienter.

69.     The misrepresentations were related to and connected with the Investor's purchase of shares in Sakhr and their sale of shares in EMS.

70.     The plaintiffs relied on the misrepresentations in making their decision to approve the Merger Agreement.

71.     The plaintiffs suffered an economic loss.

72.     Their loss was proximately caused by the misrepresentations.

73.     EMS is liable for the fraud of EXMS because it succeeded to all the liabilities of

EXMS.

## COUNT 2
### Control Person Liability
### § 20(a) of the Securities Exchange Act of 1934
### (Against Skancke and al Sharekh)

74.     The plaintiffs incorporate the allegations of paragraphs 1 to 73.

75.     Skancke was the president of Sakhr Stock and EXMS Holdings.  He had control

of those entities.  On information and belief, he was a culpable participant in the violations of §

10 committed by Sakhr Stock and EXMS Holdings and is therefore jointly and severally liable

for those violations.

76.     Al Sharekh was effectively running the business of Sakhr at the time of the

transaction.  He had control of Sakhr. On information and belief, he was a culpable participant in

the violations of § 10 committed by Sakhr and is therefore jointly and severally liable for those

violations.

## COUNT 3
### Securities Fraud
### §§ 7303(2) and 7323(a) of the Delaware Securities Act
### (Against Sakhr, EMS, and Sakhr Stock)

77.     The plaintiffs incorporate the allegations of paragraphs 1 to 76.

78.     Sakhr, EMXS, and Sakhr Stock made misrepresentations in the Merger

Agreement, namely, the misrepresentations alleged in paragraph 45, Sakhr made a

misrepresentation in a May 7, 2009 email from its lawyer to Shana'a, as alleged in paragraph 47,

and Sakhr made a material omission, namely the omission alleged in paragraph 46.

79.     The misrepresentations and omissions were material.

material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, as alleged in paragraph 46.

91.      They knew that the representations and omissions were false or were indifferent to the truth.

92.      They made the misrepresentations and omissions with the intention to induce the plaintiffs to act, that is, to approve the Merger Agreement.

93.      The plaintiffs justifiably relied on the misrepresentations and omissions.

94.      The plaintiffs have been injured as a result of their reliance.

95.      EMS is liable for the fraud of EXMS because it succeeded to all the liabilities of EXMS.

## COUNT 6
**Breach of Contract**
**(By Benjamin Van Roy, as Stockholders' Representative, Against Sakhr)**

96.      The plaintiffs incorporate the allegations of paragraphs 1 to 95.

97.      A contract existed between Sakhr and the Stockholders of EMS, represented by Benjamin Van Roy as Stockholders' Representative.

98.      Sakhr breached the contract by failing to indemnify the Stockholders from Company Indemnifiable Losses arising out of or relating to breaches or violations of the representations or warranties made by Sakhr, EXMS, or Sakhr Stock in the Merger Agreement.

99.      The Stockholders have been injured as a result of Sakhr's breach.

## COUNT 7
**Breach of Contract**
**(Against Sakhr Stock)**

100.     The plaintiffs incorporate the allegations of paragraphs 1 to 99.

*Of Counsel:*

Daniel J. Lyne
Theodore J. Folkman
Ryan E. Ferch
MURPHY & KING, P.C.
One Beacon St.
Boston, MA  02108
(617) 423-0400

Dated: September 23, 2011

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

**'11 - 863**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BENJAMIN VAN ROY, ET AL. | SAKHR SOFTWARE CO. (K.S.C.C.), ET AL |

| **(b)** County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |

| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| John G. Day, Ashby & Geddes, 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE  19899 (302) 654-1888 | Unknown |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☒ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Securities Exchange Act of 1934

Brief description of cause:
Securities Fraud, Breach of Contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $14 million

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 09/23/2011 | *[signature]* |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____